UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
IZMACO INVESTMENTS, LLC and JOHN MORGAN,

                     Plaintiffs,

          -against-

SHIFT FOREX, LLC, and SHIFT MARKETS, LTD.,

                     Defendants.
-------------------------------------------------------------------X

CIVIL ACTION NO.

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiffs, IZMACO INVESTMENTS, LLC and JOHN MORGAN (hereinafter "Plaintiffs"), by their attorneys hereby do allege as follows:

## PARTIES

1. That at all times herein mentioned, Plaintiff, IZMACO INVESTMENTS, LLC was and still is a foreign corporation duly organized and existing under the laws of the State of Virginia.

2. That at all times herein mentioned Plaintiff, JOHN MORGAN, is a resident of the County of Carteret, in the State of North Carolina.

3. That at all times herein mentioned, Defendant, SHIFT FOREX, LLC (hereinafter "Defendant"), was and still is a domestic corporation, duly organized and existing under and by virtue of the laws of the State of New York, and is duly authorized to do business in the State of New York.

4. That at all times herein mentioned, Defendant, SHIFT MARKETS, LTD (hereinafter "Defendant"), was and still is a foreign corporation and is duly authorized to do business

in the State of New York and was and still is subject to the long arm statutes of the State of New York.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(1) because this case is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

6. Venue is properly set in this district pursuant to 28 U.S.C. §1391(b) since Defendants transact business within this judicial district. Likewise, a substantial part of the events giving rise to the claim occurred within this judicial district.

## FACTUAL BACKGROUND

7. On or about May 28, 2019, Plaintiffs and Defendants commenced communications to discuss the possibility of forming a contract wherein Defendants would provide Plaintiffs with a white label end-to-end interface platform for the purpose of issuing security tokens to third-party investors (hereinafter "platform" or "product").

8. On or about August 14, 2019, Plaintiffs and Defendants contemplated forming a contract with the following payment structure:

    a. $30,000.00 payment upfront by the Plaintiffs.

    b. Defendants to deliver the platform in 8-weeks time.

    c. $5,000.00 per month from Plaintiffs to Defendants once the platform was delivered/launched.

    d. Balance due in full after the tax return season of 2020.

9. On or about September 26, 2019, Plaintiffs and Defendants entered into a contract (hereinafter "agreement" or "contract") for the issuance of the platform by Defendants, for the consideration of $150,000.00 by the Plaintiffs with the following payment structure:

    a. $50,000.00 payment upfront by the Plaintiffs.

    b. $5,000.00 per month from Plaintiffs to Defendants once the platform is delivered/launched.

    c. $30,000.00 due in May 2020.

    d. $10,000.00 per month from Plaintiffs to Defendants until balance is completely paid off.

    e. $5,000.00 per month for licensing costs to be due by Plaintiffs to Defendants starting year two (2).

10. On September 27, 2019, Plaintiffs made a payment to Defendant, SHIFT MARKETS, LTD, pursuant to the agreement in the amount of $50,000.00.

11. On October 29, 2019, despite there being no delivery of the platform to Plaintiffs by Defendants, the Plaintiff made a subsequent payment to Defendant, SHIFT MARKETS, LTD, in the amount of $5,000.00.

12. On December 4, 2019, despite there being no delivery of the platform to Plaintiffs by Defendants, the Plaintiff made a subsequent payment to Defendant, SHIFT MARKETS, LTD, in the amount of $5,000.00.

13. On January 7, 2020, despite there being no delivery of the platform to Plaintiffs by Defendants, the Plaintiff made a subsequent payment to Defendant, SHIFT MARKETS, LTD, in the amount of $5,000.00.

14. On March 9, 2020, despite there being no delivery of the platform to Plaintiffs by Defendants, the Plaintiff made a subsequent payment to Defendant, SHIFT MARKETS, LTD, in the amount of $10,000.00.

15. On April 15, 2020, despite there being no delivery of the platform to Plaintiffs by Defendants, the Plaintiff made a subsequent payment to Defendant, SHIFT MARKETS, LTD, in the amount of $1,000.00.

16. On April 16, 2020, despite there being no delivery of the platform to Plaintiffs by Defendants, the Plaintiff made a subsequent payment to Defendant, SHIFT MARKETS, LTD, in the amount of $4,000.00.

17. On May 6, 2020, despite there being no delivery of the platform to Plaintiffs by Defendants, the Plaintiff made a subsequent payment to Defendant, SHIFT MARKETS, LTD, in the amount of $3,000.00.

18. On May 11, 2020, despite there being no delivery of the platform to Plaintiffs by Defendants, the Plaintiff made a subsequent payment to Defendant, SHIFT MARKETS, LTD, in the amount of $2,000.00.

19. On June 29, 2020, despite there being no delivery of the platform to Plaintiffs by Defendants, the Plaintiff made a subsequent payment to Defendant, SHIFT MARKETS, LTD, in the amount of $1,000.00.

20. On July 30, 2020, despite there being no delivery of the platform to Plaintiffs by Defendants, the Plaintiff made a subsequent payment to Defendant, SHIFT MARKETS, LTD, in the amount of $1,000.00.

21. Despite the aforementioned payments requested by Defendants prior to delivery of the platform and despite payment of said amounts by the Plaintiffs, Defendants failed to deliver the platform in the 8-weeks that had been promised to induce the contract or in a reasonable amount of time.

22. After repeated requests by the Plaintiffs to Defendants for delivery of the platform, an impasse was reached wherein Defendants demanded further payments in order to deliver the platform.

23. On August 20, 2020, the Plaintiffs requested a full refund of the $87,000.00 paid to Defendants after Defendants failed to deliver the platform in the 8-weeks initially promised or in a reasonable time thereafter.

24. To date, Defendants have yet to refund the money owed to the Plaintiffs after failing to deliver the platform product that was contracted for.

## FIRST CAUSE OF ACTION
### (FRAUD IN THE INDUCEMENT)

25. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs "1" through "24", with the same force and effect as if fully set forth at length herein.

26. In communications on and after May 28, 2019, had in contemplation of the contract ultimately entered into on or about September 26, 2019, Defendants, through their employees and agents, made material representations to Plaintiffs about the platform Defendants could expect, and when they could expect delivery of said platform.

27. Defendants, through their employees and agents, indicated that Plaintiffs could expect delivery of a functional platform within 8-weeks.

28. Defendants knew that they could not, or would not deliver a functional platform to Plaintiffs within 8-weeks but made the assurance to induce an agreement for services.

29. Plaintiffs reasonably relied on the Defendants misrepresentation, and contracted with Defendants, and operated their business with the expectation that their business would be equipped with a functioning platform within 8-weeks.

30. Defendants' misrepresentation caused Plaintiffs to confer payment to the Plaintiffs and third-parties in the furtherance of the Plaintiffs' business operations.

31. As a result of the Defendants' misrepresentations, the Plaintiffs were caused to sustain damages in a sum, which exceed the amount in controversy required for this Court to exercise diversity jurisdiction.

## SECOND CAUSE OF ACTION
### (FRAUD)

32. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs "1" through "31", with the same force and effect as if fully set forth at length herein.

33. In September 2019 and onward, Defendants have deliberately made false statements regarding its ability to deliver the platform it contracted to deliver with the intent to deceive the Plaintiffs into making further payments not in accordance with the pay structure set forth in the contract.

34. Plaintiff reasonably relied on said false misrepresentations and in fact, made such payments to Defendants.

35. Defendants failed to deliver the platform it contracted to deliver to the Plaintiffs.

36. As a result of the Defendants' misrepresentations, the Plaintiffs were caused to sustain damages in a sum, which exceed the amount in controversy required for this Court to exercise diversity jurisdiction.

## THIRD CAUSE OF ACTION
### (CONVERSION)

37. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs "1" through "36", with the same force and effect as if fully set forth at length herein.

38. Between September 27, 2019, through July 30, 2020, Defendants induced the Plaintiffs to make payments to the Defendant, SHIFT MARKETS,LTD., in the amount of $87,000.00 as consideration for delivery of the platform.

39. On August 20, 2020, after Defendants' continued failure to deliver the platform, Plaintiffs demanded the return of the $87,000.00 it paid out to Defendants.  The Defendants have exercised and continue to exercise dominion over those funds despite Plaintiffs' greater possessory rights and interest over the funds.

40. As a result of the Defendants' conversion, the Plaintiffs were caused to sustain damages in a sum, which exceeds the amount in controversy required for this Court to exercise diversity jurisdiction.

## FOURTH CAUSE OF ACTION
### (BREACH OF CONTRACT)

41. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs "1" through "40", with the same force and effect as if fully set forth at length herein.

42. Defendants entered into a contract to deliver the platform to the Plaintiffs in a reasonable amount of time and promised to deliver in 8-weeks.

43. Defendants agreed to deliver the platform for an initial consideration of $50,000.00 with further payment being due only after the delivery of the platform.

44. Defendants demanded and received further payments from the Plaintiffs in order to deliver the platform.

45. To date, the Defendants have failed to deliver the platform to the Plaintiffs despite the contract existing between the parties.

46. Plaintiffs have fulfilled all obligations and have gone beyond the obligations contained in the contract.

## FIFTH CAUSE OF ACTION
**(UNJUST ENRICHMENT)**

47. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs "1" through "39", with the same force and effect as if fully set forth at length herein.

48. Defendants have enriched themselves through inducing the Plaintiffs to pay it $87,000.00 for a platform it has never delivered.

49. Plaintiffs have detrimentally relied on the inducement of the Defendants and have paid $87,000.00 to Defendants for a product they have never received.

50. It is against equity and good conscience to permit Defendants to retain the monies it has received by the Plaintiffs without having delivered the product it contracted to deliver.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court:

51. Enter judgment against Defendants in a sum no less than $100,000.00, together with costs and disbursements and interest computed from the date of any verdict rendered herein.

Dated: New York, New York
October 5, 2020

Yours, etc.

_____
Thomas Holmgren, Esq.
*Attorney for Plaintiffs*
IZMACO INVESTMENTS, LLC
and JOHN MORGAN
2424 42nd St. #D3
Astoria, New York 11103
(518) 683-8385
holmgren.ts@gmail.com